UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRYL WATSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PHILADELPHIA PARKING AUTHORITY; SCOTT PETRI (individually); RICHARD DICKSON (individually); CLARENA TOLSON (individually); KAREN HYERS (individually); and DARRYL WHITE (individually),<br><br>　　　　Defendants. | CIVIL ACTION NO.<br><br>PLAINTIFF REQUESTS TRIAL BY JURY |

## COMPLAINT

Plaintiff, Darryl Watson, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants, Philadelphia Parking Authority; Scott Petri (individually); Richard Dickson (individually); Clarena Tolson (individually); Karen Hyers (individually); AND Darryl White (individually) (collectively "Defendants") and upon information and belief avers the following:

## PARTIES

1. PLAINTIFF, Darryl Watson (hereinafter also referred to as "PLAINTIFF") is an African American, homosexual male, who is a resident of the Commonwealth of Pennsylvania.

2. Defendant PHILADELPHIA PARKING AUTHORITY (hereinafter referred to as "Defendant PPA") is a Corporation duly existing under the laws of the Commonwealth of Pennsylvania located on 701 Market Street, Suite 5400, Philadelphia, Pennsylvania 19106.

3. Defendant SCOTT PETRI (hereinafter also referred to as "Defendant PETRI") was

and is still employed by Defendant PPA as the Executive Director. At all times material, Defendant PETRI held supervisory authority over PLAINTIFF. Defendant PETRI is a Caucasian Male.

4. Defendant RICHARD DICKSON (hereinafter also referred to as "Defendant DICKSON") was and is still employed by Defendant PPA as a Deputy Executive Director. At all times material, Defendant DICKSON held supervisory authority over PLAINTIFF. Defendant DICKSON is a Caucasian Male.

5. Defendant CLARENA TOLSON (hereinafter also referred to as "Defendant TOLSON") was and still is employed by Defendant PPA as a Deputy Executive Director. At all times material, Defendant TOLSON held supervisory authority over PLAINTIFF.

6. Defendant KAREN HYERS (hereinafter also referred to as "Defendant TOLSON") was and still is employed by Defendant PPA as the Director of Human Resources. Defendant HYERS is a Caucasian Female. At all times material, Defendant HYERS held supervisory authority over PLAINTIFF.

7. Defendant DARRYL WHITE (hereinafter also referred to as "Defendant WHITE") was and still is employed by Defendant PPA as the Manager of Human Resources. At all times material, Defendant WHITE held supervisory authority over PLAINTIFF.

8. At all times material to this civil action, Plaintiff was qualified for his employment and possessed the education, skill and experience required to execute his duties as a joint employee for Defendants.

9. The individual Defendants named above were Plaintiff's supervisors and held supervisory authority over Plaintiff.

10. At all times material, Defendants were the joint employers of PLAINTIFF

**NATURE OF THE CASE**

11. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and under the laws of the Commonwealth of Pennsylvania, and under the Philadelphia Fair Practices Ordinance, § 9-1100 et. seq. ("PFPO"), and seeks damages to redress injuries Plaintiff suffered as a result of discrimination, harassment, hostile work environment, disparate treatment, and retaliation for opposing and reporting Defendants unlawful conduct and comments, which ultimately led to Plaintiff's unlawful termination by his employer.

**JURISDICTION AND VENUE**

12. This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964.

13. The honorable Court also has supplemental jurisdiction over the Commonwealth law and Municipal Causes of Action.

14. Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the City of Philadelphia where the discrimination complained of occurred.

15. On or about October 30, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

16. On or about March 10, 2021, the EEOC issued Plaintiff a Dismissal and Notice of Rights.

17. This action is commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

## MATERIAL FACTS

18. On or about February 24, 2020, Defendant PPA hired PLAINTIFF as a Data Officer.

19. PLAINTIFF is a homosexual, African American male.

20. On February 28, 2020, four (4) days after his hire, Defendant TOLSON and Defendant DICKSON called PLAINTIFF into a meeting. Upon arrival to the meeting, Defendant TOLSON informed PLAINTIFF that the meeting involved his social media postings.

21. PLAINTIFF has maintained a Facebook and Twitter account for the last ten (10) years. PLAINTIFF'S posts, some authored or shared, cover topics of race, sexuality, politics, and self-healing.

22. Specifically, Defendant TOLSON, brought up a post created by PLAINTIFF which stated, "This guy has a nice butt I hope his girlfriend knows how lucky she is."

23. PLAINTIFF'S social media post was made on his personal account. Further, the post was not: created or posted during work hours, created or posted on a company device, and was not created or directed toward an employee of Defendant PPA. PLAINTIFF informed Defendant TOLSON and DICKSON of same.

24. Defendant TOLSON and DICKSON then changed the meeting's focus from PLAINTIFF'S alleged violation of Defendant PPA'S social media policy to his sexuality.

25. Prior to this meeting, PLAINTIFF had not disclosed any information regarding his sexual orientation.

26. During the meeting, Defendant TOLSON and Defendant DICKSON repeatedly told PLAINTIFF that Defendant PPA was a "conservative place," and that because of his post, "[straight] men would not feel comfortable around [him] without wondering if [he] was checking them out."

27. Defendant TOLSON also stated that PLAINTIFF could be looked at as a "sexual predator" for his social media post. PLAINTIFF was extremely offended by her comment as he is a sexual assault survivor.

28. In having this conversation with PLAINTIFF, Defendant TOLSON and Defendant DICKSON conceded that Defendant PPA maintained a work environment that was openly hostile to homosexuals.

29. Defendant DICKSON then stated to PLAINTIFF that he did not know what it was like to be a "Black, gay man," but that in the workplace "certain compromises had to be met because everyone isn't comfortable with [them]." Defendant DICKSON was alluding the because PLAINTIFF was Black *and* gay his homosexuality had to be concealed as an employee of Defendant PPA.

30. Defendant TOLSON and Defendant DICKSON informed PLAINTIFF that he would have to complete mandatory trainings about ethics, sexual harassment, and social media use training. Defendant TOLSON and Defendant DICKSON also stated that Defendant PETRI stated that PLAINTIFF'S posts were a "disappointment."

31. Upon information and belief, Defendants have neither reprimanded nor scrutinized any heterosexual employee for social media accounts and/or postings.

32. Defendant TOLSON and DICKSON made it clear to PLAINTIFF that his homosexuality was an issue for Defendant PETRI.

33. Later that day, PLAINTIFF scheduled two meetings to speak with Defendant PETRI to discuss the social media posts. However, Defendant PETRI refused to meet with PLAINTIFF stating that he "did not have time today" to meet with PLAINTIFF.

34. Thereafter, PLAINTIFF continued to perform his work duties. PLAINTIFF authored a 45-page draft annual report for the Red-Light Camera program, participated in a monthly board, and worked with the IT director, Jacqueline Harris, to create a unified plan and vision of the technical and data assets and needs of the PPA.

35. On March 3, 2020, Defendant HYERS and Defendant WHITE called PLAINTIFF into a meeting to further discuss his social media posts.

36. Defendant HYERS presented PLAINTIFF with about twenty (20) of PLAINTIFF'S posts and messages from Facebook and Twitter for him to review.

37. PLAINTIFF explained to Defendant HYERS that the postings and messages that were pulled were all created prior to his hire. In fact, some of the posts presented were created by PLAINTIFF nearly five (5) years prior to his hire. PLAINTIFF stated that Defendants never advised or directed him that he was required to tailor his social media, and that the posts that were pulled did not violate Defendant PPA'S social media policies.

38. Upon information and belief, Defendant PPA did not examine with such scrutiny social media accounts that belonged to white heterosexual employees.

39. Defendant HYERS agreed that the posts did not violate Defendant PPA'S social media policies.

40. Nonetheless, Defendant HYERS fired PLAINTIFF, telling him he was terminated for allegedly violating Defendant PPA'S social media policy.

41. Defendant PPA fired PLAINTIFF four days after they discovered that he was homosexual.

42. In terminating PLAINTIFF, Defendant PPA violated their own "Three Strikes" policy, as they did not allow PLAINTIFF to take any corrective actions to remedy his "violation" prior to his termination or allowed to discuss the alleged violation with Defendant PETRI.

43. Defendants acknowledged that the workplace has a culture of homophobia.

44. Defendants' reasoning for PLAINTIFF'S termination is pretextual.

45. Defendants' terminated PLAINTIFF'S employment due to his sexual orientation and/or due to his race,

46. As a result of Defendants' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

47. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

48. That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

49. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages against all the Defendants jointly and severally.

50. PLAINTIFF further claims aggravation, activation and/or exacerbation of any preexisting condition.

51. PLAINTIFF claims that Defendants unlawfully discriminated against PLAINTIFF because of his sexual orientation and/or his race and because he complained of an opposed the unlawful conduct of Defendants related to the above protected class.

52. PLAINTIFF further claims constructive and/or actual discharge to the extent PLAINTIFF is terminated from PLAINTIFF'S position as a result of the unlawful discrimination and retaliation.

53. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected PLAINTIFF to on a continuous and on-going basis throughout PLAINTIFF'S employment.

54. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

55. PLAINTIFF claims alternatively that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

56. PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

## COUNT I
## DISCRIMINATION UNDER TITLE VII
## HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT
### (against corporate Defendants only)

57.Plaintiff hereby incorporates all allegations contained in the paragraphs above.

58.This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

59.SEC. 2000e-2. *[Section 703]* states as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer -
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

60.Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of Plaintiff's sex and gender and due to Defendants' preconceived notions of gender norms which Defendants believed that Plaintiff did not conform to.

61.Ultimately, Plaintiff was terminated unlawfully in violation of Title VII. Plaintiff's termination was an adverse employment action that occurred under an inference of gender and sex discrimination.  Any proffered reason Defendants can provide to justify Plaintiff's termination is nothing but pretext.

9

## COUNT II
## RETALIATION UNDER TITLE VII
**(against corporate Defendants only)**

62. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

63. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

64. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of his opposition to and reporting of the unlawful employment practices of Defendants.

## COUNT III
## DISCRIMINATION UNDER
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
**(against all named Defendants)**

65. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

66. The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the

following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

67. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's sex and gender and due to Plaintiff's status as a transitioning female to male.

68. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

69. Plaintiff claims disparate treatment and hostile work environment as described above pursuant to the Philadelphia Fair Practices Ordinance.

**COUNT IV**
**RETALIATION UNDER THE**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(against all named Defendants)**

70. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

71. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

11

72. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## COUNT V
## DISCRIMINATION UNDER
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (against all named Defendants)

73. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

74. The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

75. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## COUNT VI
## DISCRIMINATION UNDER STATE LAW – AIDING AND ABETTING
### (against individual Defendants only and not against corporate Defendants)

76. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

77. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

78. Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

79. The individually named Defendants took active part by aiding, abetting, compelling, and inciting the discrimination and harassment described in detail above.

80. Any individuals who may not have had direct supervisory authority over Plaintiff are still subject to individual liability under this section as they actively took unlawful action against Plaintiff pursuant to the direction, instruction, and sanctioning of individuals with direct supervisory authority over Plaintiff.

81. Individuals without supervisory authority act with supervisory authority when they carry out unlawful discriminatory conduct at the direction and with the express authorization of individuals with supervisory authority.

## COUNT VII
## DISCRIMINATION UNDER STATE LAW
### (against corporate Defendants only)

82. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

83. The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

> "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

84. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's sex and gender.

13

85. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## COUNT VIII
## RETALIATION UNDER STATE LAW
(against all Defendants)

86. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

87. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

88. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## COUNT IX
## DISCRIMINATION UNDER STATE LAW
(against individual Defendants only)

89. Plaintiff hereby incorporates all allegations contained in the paragraphs above.

90. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

91. Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing assault and battery, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By: ___/s/Erica A. Shikunov_____
Erica A. Shikunov, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: Erica@dereksmithlaw.com

DATED: March 30, 2021