IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRYL WATSON<br>              **Plaintiff,**<br>v.<br>**PHILADELPHIA PARKING AUTHORITY,** *et al.*<br>              **Defendants.** | CIVIL ACTION NO. 21-1514 |

<u>MEMORANDUM OPINION</u>

Rufe, J.                                                                                                                                February 16, 2022

Plaintiff Darryl Watson has sued his former employer, the Philadelphia Parking Authority ("PPA") and several PPA supervisors, alleging that he was terminated because of his race and sexual identity and subjected to a hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964[1] and the Philadelphia Fair Practices Ordinance ("PFPO").[2] Defendants have filed a motion to dismiss, which will be granted in part and denied in part.

I.       **LEGAL STANDARD**

To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[4] In evaluating a

---

[1] 42 U.S.C. § 2000e, *et seq*.

[2] Phila. Code § 9-1100, *et seq*.

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

[4] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citations omitted).

1

challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[5] However, the Court disregards "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."[6]

## II.     ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiff describes himself as "a homosexual, African American male."[7] On the fourth day of Plaintiff's employment with the PPA, he was called into a meeting with Defendants Clarena Tolson and Richard Dickson, Deputy Executive Directors of the PPA. The subject of the meeting was a social media post created by Plaintiff that read "[t]his guy has a nice butt I hope his girlfriend knows how lucky she is."[8] Plaintiff informed the supervisors that the post was created on his own time, using his personal device, and was not directed toward any PPA employee. The supervisors then told Plaintiff that the PPA was a conservative place, that straight men would not feel comfortable around him without wondering if he was "checking them out," that he could be viewed as a "sexual predator" for the post, and that not everyone would be comfortable with Plaintiff as a "Black, gay man."[9] Plaintiff was told that he would have to complete mandatory training on ethics, sexual harassment, and social media use. Plaintiff attempted to meet with the Executive Director of the PPA, Defendant Scott Petri, but Petri did not meet with him. Over the next week, Plaintiff performed his job duties but was called into a

---

[5] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

[6] *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).

[7] Am. Compl. [Doc. No. 7] at ¶ 19.

[8] Am. Compl. [Doc. No. 7] at ¶ 22.

[9] Am. Compl. [Doc. No. 7] at ¶¶ 26–29.

second meeting on March 3, 2020, with Defendants Karen Hyers (Director of Human Resources) and Darryl White (Manager of Human Resources) where he was shown 20 of his past social media posts. Even though the posts predated his employment and Defendant Hyers agreed that they did not violate the PPA's social media policy, Defendant Hyers fired Plaintiff, telling him that he violated the policy.[10] The termination did not follow the PPA's progressive discipline policy. Plaintiff alleges that the social media posts of heterosexual employees and employees who are not African American are not subject to such scrutiny.[11]

### III. DISCUSSION

#### A. Discrimination Claims under Title VII[12]

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[13] Plaintiff alleges that he was discriminated against because of his sex and gender, and because of Defendants' preconceived notions of gender norms. Discrimination "based on homosexuality or transgender status necessarily entails discrimination based on sex."[14]

Employment discrimination claims are usually evaluated by applying the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*,[15] which first requires a determination of whether the plaintiff has made a *prima facie* showing of discrimination or

---

[10] Am. Compl. [Doc. No. 7] at ¶ 47.

[11] Am. Compl. [Doc. No. 7] at ¶¶ 31, 44.

[12] The claims under Title VII are asserted only against the PPA, as Title VII does not provide for liability of individual employees. *See Williams v. Pa. Hum. Rels. Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017).

[13] 42 U.S.C. § 2000e-2(a)(1).

[14] *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020).

[15] 411 U.S. 792 (1973).

retaliation. However, "[a] prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim."[16] Instead, at this stage, the Court must determine only whether Plaintiff has alleged "sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims."[17]

Plaintiff alleges that he belongs to a protected class, that he was qualified for his job, and that he performed that job well. Plaintiff alleges, however, that once PPA learned Plaintiff was homosexual, he was told that he could be viewed as a sexual predator for a single social media comment that a man (who had no connection to PPA) had a "nice butt." Plaintiff alleges that he was fired after further scrutiny of his social media posts, despite the lack of any connection between those posts and his job at PPA. Plaintiff also alleges that Caucasian and heterosexual employees were not subjected to similar scrutiny of their social media posts. These allegations are sufficient for the Title VII discrimination claims to move forward against the PPA.[18]

### B.     Retaliation Claims Under Title VII

Under Title VII, an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[19] A plaintiff states a claim "if she pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence … (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action

---

[16] *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quotation marks and citations omitted).

[17] *Id.*

[18] The allegations of discrimination based on race are more tenuous, but Plaintiff quotes one of the supervisors as saying that not everyone would be comfortable with a "Black, gay man," thereby tying the two protected classes together. The Court will not dismiss the claim at this stage.

[19] 42 U.S.C. § 2000e-3(a).

against her; and (3) a causal link exists between her protected conduct and the employer's adverse action."[20] Complaints to management may constitute opposition to discrimination.[21] In his opposition to the motion to dismiss, Plaintiff alleges that he was retaliated against after he (1) complained that there was nothing wrong with his social media activity; (2) complained that heterosexual white men were not subjected to the same level of scrutiny of social-media posts; and (3) attempted to meet with Defendant Petri, the Executive Director of the PPA, which resulted in further scrutiny of his social media profile and his termination.[22] Although it is a thin reed, Plaintiff may be able to adduce evidence in discovery that his complaints about the first meeting led to further scrutiny and his termination. The Court will allow this claim to proceed.

### C. Hostile Work Environment Claims Under Title VII

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated."[23] To state a claim for hostile work environment, a plaintiff must allege that (1) they were intentionally discriminated against because of race, color, religion, sex, or national origin; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for employer liability.[24]

---

[20] *Connelly*, 809 F.3d at 789.

[21] *Moore v. City of Phila.*, 461 F.3d 331, 343 (3d Cir. 2006).

[22] Plf. Opp. Mot. Dismiss [Doc. No. 10] at 10.

[23] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted); *Hundley v. Wawa, Inc.*, No. 21-627, 2021 WL 2555440, at *9 (E.D. Pa. June 22, 2021).

[24] *Manel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Although the rights guaranteed by "§ 1981 and Title VII 'are separate, distinct, and independent,'" the same elements apply to claims of hostile work environment under both statutes. *Hamilton v. City of Phila.*, No. 18-5184, 2019 WL 4220899, at *4 (E.D. Pa. Sept. 5, 2019) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975)).

In determining whether discrimination is severe or pervasive, a court must consider all of the relevant circumstances including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[25] Isolated incidents of discrimination, unless extremely serious, do not alter the conditions of employment and therefore do not constitute a hostile work environment.[26] Plaintiff has not alleged facts here that would rise to this level. Title VII does not establish "a general civility code" for the workplace, and this claim will be dismissed.[27]

### D.  Claims Under the PFPO

The PFPO protects against discrimination based on "race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status. . . ."[28] Claims under the PFPO mirror the standard under Title VII.[29] For the reasons discussed above, the discrimination and retaliation claims against the PPA will not be dismissed.

Plaintiff also seeks to hold five supervisors liable under the PFPO, which makes it unlawful for any individual to "aid, abet, incite, compel or coerce" a prohibited discriminatory act.[30] "At the motion-to-dismiss stage, '[c]ourts have permitted discriminatory aiding and

---

[25] *Harris*, 510 U.S. at 23.

[26] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

[27] *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

[28] Phila. Code, Title 9, Ch. § 9-1103(1). In connection with the PFPO claims, Plaintiff alleges that he was discriminated against because of his status "as a transitioning female to male." Am. Compl. [Doc. No. 7] at ¶ 67. There are no facts alleged in support of this claim.

[29] *Gates v. Aramark Campus, LLC*, No. 21-1081, 2022 WL 245303 at * 8 (E.D. Pa. Jan. 24, 2022).

[30] Phila. Code § 9-1103(1)(h).

abetting claims to proceed where a supervisor has terminated the plaintiff due to their protected status.'"[31] The only allegation against Defendant Petri is that he said "he did not have time today" to meet with Plaintiff and refused to meet with Plaintiff before Plaintiff was fired.[32] Plaintiff has not alleged that Defendant Petri had the requisite personal involvement for liability under the PFPO.[33] The only Defendant against whom Plaintiff alleges a discriminatory act (that is, an act that changed the conditions of Plaintiff's employment) is Defendant Hyers, who fired Plaintiff. This is sufficient to state a claim as to Defendant Hyers, but the claims against the other individual Defendants will be dismissed.

## IV. CONCLUSION

For the reasons explained above, the Court will dismiss the claims for hostile work environment against the PPA and the claims under the PFPO against Defendants Petri, Dickson, Tolson, and White. The Court will grant Plaintiff leave to file a further amended complaint if he elects to do so. An order will be entered.

---

[31] *Vasoli v. Yards Brewing Co.*, No. 21-2066, 2021 WL 2808823, at *4 (E.D. Pa. July 6, 2021) (quoting *Ahern v. EResearch Tech., Inc.*, 183 F. Supp. 3d 663, 671 (E.D. Pa. 2016)).

[32] Am. Compl. [Doc. No. 7] at ¶¶ 35–36.

[33] *McCowan v. City of Phila.*, No. 19-3326, 2021 WL 84013, at *14–15 (E.D. Pa. Jan. 11, 2021).