IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARRYL WATSON**<br><br>                    **Plaintiff,**<br><br>        **v.**<br><br>**PHILADELPHIA PARKING<br>AUTHORITY**<br><br>                    **Defendant.** | **CIVIL ACTION NO. 21-1514** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                    **August 28, 2023**

Plaintiff Darryl Watson has sued his former employer, the Philadelphia Parking Authority ("PPA"), alleging that he was terminated because of his race and sexual identity and subjected to retaliation, in violation of Title VII of the Civil Rights Act of 1964[1] and the Philadelphia Fair Practices Ordinance ("PFPO").[2] Defendant has moved for summary judgment on all claims. For the reasons explained below, Defendant's motion will be granted in part and denied in part.

## I.      LEGAL STANDARD

Under the Federal Rules of Civil Procedure Rule 56(a), summary judgment may be granted if there is no issue of material fact, and the moving party is entitled to judgment as a matter of law.[3] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[4] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

---

[1] 42 U.S.C. § 2000e, *et seq*.

[2] Phila. Code § 9-1100, *et seq*.

[3] *See* Fed. R. Civ. P. 56(a).

[4] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

[5] *Id.*

A court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[6] Further, a court may not weigh the evidence or make credibility determinations.[7] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[8] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

## II.   FACTUAL BACKGROUND

The basic facts are generally undisputed; where there are disputes, the facts are viewed in the light most favorable to Plaintiff as the non-moving party. Plaintiff describes himself as an African-American, homosexual male.[10] He began working at the PPA on February 24, 2020, as a "Data Officer."[11] On his first day of employment, Plaintiff was given a copy of the PPA's social media policy and the employee handbook.[12] Before and during his employment with the PPA, Plaintiff maintained various social media accounts.[13] During Plaintiff's first week of employment, Defendant received an anonymous complaint regarding Plaintiff's social media use.[14] The anonymous complaint referenced posts written before his employment and one post written on February 26, 2020, after Plaintiff started at the PPA, stating "this guy has the prettiest

---

[6] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[7] *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[9] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[10] Joint Statement of Stipulated Material Facts [Doc. No. 25-1] ¶ 2.

[11] *Id.* ¶ 3.

[12] Joint Statement of Stipulated Material Facts [Doc. No. 25-1] ¶¶ 10-11.

[13] Joint Statement of Stipulated Material Facts [Doc. No. 25-1] ¶ 12.

[14] Joint Statement of Stipulated Material Facts [Doc. No. 25-1] ¶ 13.

ass…I hope his girlfriend knows how lucky she is!"[15] The post did not include a photograph or identify the individual.

Plaintiff testified in his deposition that during a meeting about the post, his direct supervisor, Deputy Executive Director Clarena Tolson, told him that "heterosexual men, employees, wouldn't want to work with [Plaintiff] without—without fearing for their safety and that people could consider [Plaintiff] a sexual predator because of it."[16] Plaintiff further testified that Richard Dickson, the First Deputy Executive Director, then told him, "I'm sorry, I don't know how it feels to be a Black, gay man, but [] gay men are under so much scrutiny here," and that because Plaintiff was "coming from multiple identity groups" he "would face even higher scrutiny."[17] Tolson and Dickson determined that Plaintiff did not create this post during work time, it did not refer to a PPA employee, and it did not violate the company's social media policy.[18] Scott Petri, the Executive Director of the PPA, was not in this meeting and Plaintiff asserts that Petri refused to meet with him.[19]

The PPA then received another complaint about posts pre-dating Plaintiff's employment.[20] This resulted in further scrutiny of posts written while Plaintiff was employed by the PPA, and three in particular, which were posted on February 24 and 25, 2020. The first of these posts read "City benefits are already nice…but these PPA benefits!!! mah gahd!"[21] The

---

[15] Pl.'s Resp. Opp. Def.'s Mot. Summ. J. Ex. 5 [Doc. No. 28-6].

[16] Pl.'s Resp. Opp. Def.'s Mot. Summ. J. Ex. 4 ("Pl.'s Dep.") [Doc. No. 28-5] at 90.

[17] Pl.'s Dep. [Doc. No. 28-5] at 90:24-91:1-2, 91:13-14.

[18] Joint Statement of Stipulated Material Facts [Doc. No. 25-1] ¶¶ 15, 18.

[19] Pl.'s Statement of Undisputed Facts [Doc. No. 28-1] ¶¶ 2, 17. Petri testified in deposition that he did not believe anyone requested to meet with him and that because there was no infraction, there was no reason for such a meeting. Def.'s Reply Ex. 1 ("Petri Dep.") [Doc. No. 30-2] at 86-87.

[20] This complaint was not anonymous. *See* Def.'s Reply Ex. 14 [Doc. No. 30-2] at ECF page 112.

[21] Pl.'s Resp. Opp. Def.'s Mot. Summ. J. Ex. 6 [Doc. No. 28-7].

second depicted images of Plaintiff's office and name plate with the caption, "y'all someone called me 'Mr. Watson' today and damn I near had an anxiety attack."[22] The last post stated, "I need some interns, data analysts, gis analysts, dbas, and project managers! i'm probably going to be working on staffing plans this weekend. honestly, hella excited. i just got 5 projects given to me."[23] Plaintiff was fired on March 3, 2020, eight days after he started.[24]

### III.    DISCUSSION

#### A.    The *McDonnell Douglas* Burden-Shifting Framework

In the absence of direct evidence of discrimination, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green.*[25] This requires that the employee first establish a *prima facie* case, after which the employer must come forward with a legitimate, non-discriminatory reason for the adverse employment decision.[26] If the employer does so, the employee must then demonstrate that the proffered reason was merely a pretext for unlawful discrimination.[27] To make a showing of pretext, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) "disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[28]

The burden-shifting framework established in *McDonnell Douglas* "was never intended

---

[22] Pl.'s Resp. Opp. Def.'s Mot. Summ. J. Ex. 7 [Doc. No. 28-8].

[23] Pl.'s Resp. Opp. Def.'s Mot. Summ. J. Ex. 8 [Doc. No. 28-9].

[24] Statement of Stipulated Material Facts [Doc. No. 25-1] ¶ 19. Plaintiff returned to his former employment with the City of Philadelphia after being fired from the PPA. Pl.'s Dep. [Doc. No. 28-5] at 11-18.

[25] *See, e.g., Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

[26] *See Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).

[27] *See McDonnell Douglas,* 411 U.S. at 802-03; *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) (citations omitted).

[28] *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) (citations omitted).

to be rigid, mechanized or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination."[29]

### B.   Discrimination Claims

To establish a *prima facie* case of discrimination under Title VII,[30] Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that similarly-situated persons outside of his protected class were treated more favorably, or that the circumstances otherwise give rise to an inference of discrimination.[31]

The first three elements of the *prima facie* case are uncontested: Plaintiff is a member of a protected class, he was qualified for his position, and he suffered an adverse employment action. However, Defendants argue that Plaintiff has not established that others outside of his protected class were treated more favorably or that circumstances otherwise suggest discrimination. Plaintiff argues that the comments made at the meeting about his status as a "gay, Black man" give rise to an inference of discrimination based on his sexual identity and race. Defendant argues that this merely constituted a "stray remark" by a non-decisionmaker, and is not evidence of discrimination.[32] The Third Circuit has held that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."[33] In this case, however, Plaintiff testified that the remarks were made by PPA senior officials less than

---

[29] *Weldon v. Kraft, Inc.,* 896 F.2d 793, 798 (3d Cir. 1990) (internal quotation marks and citation omitted).

[30] The PFPO claims against the PPA rise or fall with the Title VII claims. *See Szyper v. Am. Med. Resp. Mid-Atlantic, Inc.,* No. 21-3272, 2023 WL 2597585, at *2 (3d Cir. Mar. 22, 2023).

[31] *Goosby v. Johnson & Johnson Med.*, Inc., 228 F.3d 313, 318-19 (3d Cir. 2000) (citation omitted).

[32] Def.'s Reply Supp. Mot. Summ. J. [Doc. No. 30] at 17.

[33] *Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 545 (3d Cir. 1992) (citations omitted).

one week prior to his termination and were central to the discussion regarding his social media posts..[34] Thus, Plaintiff has adduced facts that he was scrutinized differently because of his race and sexual orientation. This is sufficient to satisfy the fourth element of the *prima facie* case.

Defendant has offered a non-discriminatory basis for Plaintiff's termination, arguing that "the manner in which [Plaintiff had] opted to use social media demonstrate[d] a serious lack of discretion and violates basic standards of conduct that any employer would reasonably anticipate from a senior level employee."[35] Petri described the posts as "braggadocios," contending that Plaintiff's post about the generous benefits suggested that the PPA was not a good steward of public funds, and that his other work-related post, in which he stated that he would be "working on staffing plans," misrepresented his ability to hire staff.[36] A reasonable fact-finder could credit this explanation, and therefore the burden shifts back to Plaintiff to cast doubt on the reasons given by Defendant.

Plaintiff contends that neither Dickson nor Tolson mentioned Plaintiff's work-related posts during their meeting about Plaintiff's social media, even though these posts predated the one discussed in the meeting. Instead, Plaintiff argues that the meeting was focused on the fact that Plaintiff is a "Black, gay man," and that, according to Tolson, he could be viewed as a "sexual predator." Plaintiff further testified that after this meeting, he asked for and was denied training on social media use.[37] Taken together, Plaintiff has adduced evidence suggesting that the termination decision was not based on the work-related posts. Because Plaintiff has offered evidence from which a reasonable factfinder could infer that Defendant's proffered reasons are

---

[34] *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 183 (3d Cir. 2009).

[35] *See* Def.'s Mot. Summ. J. [Doc. No. 28] at 3.

[36] Petri Dep. [Doc. No. 28-2] at 112.

[37] *See* Pl.'s Dep. [Doc. No. 28-5] at 93.

false or pretextual, summary judgment will be denied on the discrimination claims.

### C.     Retaliation Claims

To establish a *prima facie* retaliation claim, Plaintiff must demonstrate that: (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) his protected activity was the "but-for" cause of the adverse employment action.[38] Protected activity is evidenced by plaintiff showing that he (1) opposed a practice made unlawful by Title VII, (2) filed a charge of discrimination, or (3) participated in a charge brought by another.[39] As Plaintiff has not produced any evidence that he engaged in any protected activity during his employment, summary judgment will be granted on the retaliation claims.

### IV.     CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment will be granted as to the retaliation claims and denied as to the discrimination claims. An order will be entered.

---

[38] *See Swanson v. Nw. Hum. Servs., Inc.*, 276 F. App'x 195, 196 (3d Cir. 2008) (citing *Charlton v. Paramus Bd. of Ed.*, 25 F.3d 194, 201 (3d Cir.1994)); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013).

[39] *See* 42 U.S.C. § 2000e–3(a).