IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARRYL WATSON**<br><br>    **Plaintiff,**<br><br>  v.<br><br>**PHILADELPHIA PARKING**<br>**AUTHORITY**<br><br>    **Defendants.** | **CIVIL ACTION NO. 21-1514** |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                      **March 29, 2024**

   Plaintiff Darryl Watson filed suit against the Philadelphia Parking Authority ("PPA")

alleging discrimination based on race and sexual orientation under Title VII and the Philadelphia

Fair Practices Ordinance.[1] On March 18, 2024, the jury returned a verdict, finding that the PPA

intentionally discriminated against Mr. Watson based on his sexual orientation, but not based on

his race.[2] Before the Court is Plaintiff's Motion for an Award of Reasonable Attorneys' Fees and

Costs and for Back Pay and Front Pay Damages.[3] For the following reasons, the Motion will be

granted in part and denied in part.

---

[1] Plaintiff's Amended Complaint initially brought five Counts against the PPA and five individual Defendants. *See* Doc. No. 7. The Court granted Defendants' Motion to Dismiss the hostile work environment claims against the PPA and the claims under the PFPO against four of the five Defendants (Petri, Dickson, Tolson, and White). *See* Doc. Nos. 13, 14. Later, the parties stipulated to the dismissal of the remaining individual Defendant Karen Hyers after her death. *See* Doc. No. 21. The parties also stipulated to the dismissal of Count V (aiding and abetting under the PFPO). *See* Doc. No. 24. The Court granted the PPA's motion for summary judgment as to the retaliation claims under Title VII and the PFPO. *See* Doc. Nos. 34, 35.

[2] The jury awarded nominal damages of $1.00 and issued an advisory verdict of $27,000 in back pay. *See* Verdict [Doc. No. 86].

[3] *See* Doc. No. 87.

## I.        Back Pay Calculations

Title VII authorizes a back pay award as a remedy for intentional discrimination.[4] The back pay award authorized by Title VII "is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination."[5] There is a presumption in favor of back pay once liability has been found.[6] The Court measures back pay under Title VII by "tak[ing] the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained."[7] Back pay is an equitable remedy to be determined by the Court.

A Title VII plaintiff has a statutory burden to mitigate damages, while the employer has the burden of proving a failure to mitigate.[8] To meet its burden, an employer must demonstrate that (1) substantially equivalent work was available, and (2) the Title VII claimant did not exercise reasonable diligence to obtain the employment.[9] The defendant may meet this burden, for example, through cross-examination of the nature of a plaintiff's search for other employment.[10] Plaintiff was terminated from the PPA on March 2, 2020, less than two weeks before the start of mandatory shutdowns as a result of the COVID-19 pandemic. The Court finds that Plaintiff partially mitigated his damages by securing his return to the City several months later, which was still during the height of the pandemic. The Court will award back pay for the

---

[4] 42 U.S.C. § 2000e-5(g)(1).

[5] *Loeffler v. Frank,* 486 U.S. 549, 558 (1988) (quotation marks and citation omitted).

[6] *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 & n. 12 (1975).

[7] *Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1119-20 (3d Cir. 1988).

[8] *Robinson v. SEPTA, Red Arrow Div.,* 982 F.2d 892, 897 (3d Cir. 1993); *Anastasio v. Schering Corp.,* 838 F.2d 701, 707–08 (3d Cir. 1988).

[9] *Anastasio,* 838 F.2d at 708.

[10] *Robinson*, 982 F.2d at 897.

time Plaintiff was unemployed, from March 3, 2020 to September 4, 2020 (185 days), in the amount of $54,711.34.[11]

However, Plaintiff also testified that he did not actively seek employment with a salary comparable to the PPA position at any time thereafter, and therefore did not fully mitigate his damages. The jury in its advisory verdict, awarded $27,000, from which the Court infers an intent to award back pay for the difference in salary for approximately one year.[12] The Court agrees with this determination of partial mitigation and will award back pay for a period of one year in addition to the back pay awarded during Plaintiff's six months of unemployment.

The difference in salary from the PPA position ($107,944) to Plaintiff's salary during his first year back at the City ($80,752) is $27,192. By adding Plaintiff's lost wages from March 3, 2020 to September 4, 2020 ($54,711.34) with the difference in salary for the year ($27,192), the Court finds that Plaintiff is entitled to a total back pay award of $81,903.34. The Court finds this award equitable to compensate Plaintiff while recognizing that Plaintiff never sought employment commensurate with the PPA salary after his initial return to the City.[13]

## II.   Pension Calculations

Plaintiff failed to present sufficient evidence to establish a back pay award for "pension benefits." Pension calculations require a sophisticated analysis that was not presented at trial, and is not explained adequately by Plaintiff. Plaintiff did not present an economic expert or someone

---

[11] *See* Doc. No. 87-1 at 34.

[12] *See* Verdict [Doc. No. 86].

[13] The Court also exercises its discretion in making this award to account for the fact that largely due to cascading delays caused by the pandemic, the trial schedule, and thus the period for which back pay could be awarded, was extended to some degree.

with specialized knowledge of the pension benefits at trial and Plaintiff's own lay testimony is insufficient to establish a basis for awarding pension benefits.[14]

### III.    Front Pay Calculations

Front pay is meant to be used for a reasonable period for the victim to reestablish his "rightful place in the job market."[15] Just as with back pay, front pay is an equitable remedy to be determined by the Court.[16] Because work and life expectancy "are pertinent factors in calculating front pay . . . such an award 'necessarily implicates a prediction about the future.'"[17] "[T]he district court must decide which award is most appropriate to make the claimant whole."[18] The Court may enlist an advisory jury.[19]

The Court agrees with Defendant that Plaintiff's front pay claim is utterly speculative. Plaintiff is requesting $44,720 in front pay, and an additional $7,308 in pension benefits for a total of $52,028 in front pay damages. As detailed above, Plaintiff has failed to produce sufficient evidence to establish an award for pension benefits. Plaintiff requests front pay for five years into the future based on his current salary at the City of Philadelphia at a salary of $99,000, which Plaintiff has calculated as $44,720. This does not account for future salary increases, which are likely to occur throughout this five-year period; nor does it address whether Plaintiff

---

[14] *See Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 83 n.6 (3d Cir. 2009) ("There were two components of Donlin's back-pay award: lost wages and lost pension earnings. While we approve of Donlin's testimony with regard to her lost wages, we find that the District Court improperly credited Donlin's testimony that she lost $9,453 in back pension benefits.").

[15] *Id.* at 87 (quotation marks and citation omitted).

[16] *Id*. at 78 n.1.

[17] *Id.* at 87.

[18] *Id.*

[19] *See* Fed. R. Civ. P. 39(c).

would be able to obtain a higher rate of pay through promotion or another job.[20] Plaintiff's Motion was devoid of any argument as to why Plaintiff needs an additional five years to "reestablish [his] rightful place in the job market."[21] Plaintiff started his job back at the City on September 4, 2020, and has received multiple salary increases and one promotion. Furthermore, the Court takes into consideration the fact that the jury in its advisory verdict did not return an award of any front pay to Plaintiff.[22]

## IV.    Attorneys' Fees and Costs

Under Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs."[23] A fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous."[24] A plaintiff must establish that they are (1) the prevailing party and (2) that the requested fees are reasonable.[25] Plaintiff requests $228,193.30 in attorneys' fees and $6,882.73 in costs. The Court first addresses whether Plaintiff is the prevailing party before assessing the reasonableness of the requested fees and costs.

### A.  Reasonable Attorneys' Fees and Costs as the Prevailing Party

---

[20] From 2020 until 2024, Plaintiff received three salary increases and one promotion at the City. *See* Doc. No. 87-1 at 34. Therefore, it is likely that throughout a five-year period Plaintiff's salary will increase.

[21] *Donlin*, 581 F.3d at 87.

[22] *See* Verdict [Doc. No. 86].

[23] 42 U.S.C. § 2000e-5(k).

[24] *Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) (quoting *Pennsylvania Envt'l Def. v. Canon-McMillan*, 152 F.3d 228, 232 (3d Cir. 1998)).

[25] *Hare v. Potter*, 549 F. Supp. 2d 698, 702 (E.D. Pa. 2008) (citing *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996)).

While the Court may adjust a fee upward or downward based on the results of the case,[26] "[c]ourts have broadly defined a prevailing party for purposes of triggering the application of a fee shifting statute."[27] The test to determine "prevailing party status" is whether the "plaintiff achieved some of the benefit sought by the party bringing suit."[28] If a plaintiff prevails on some of the benefit sought, then the plaintiff will be viewed as a prevailing party, except in "an exceptional case."[29]

Here, Mr. Watson went to trial on claims for (1) discrimination based on race under Title VII and the PFPO and (2) discrimination based on sexual orientation under Title VII and the PFPO. The jury returned a verdict finding that the PPA intentionally discriminated against Plaintiff based on his sexual orientation, but not on his race. Plaintiff prevailed on a core issue of his Complaint:  that the PPA engaged in intentional discrimination. This is an important vindication of Plaintiff's civil rights. In addition, as set forth above, the Court awards a substantial verdict on back pay to Mr. Watson, although it is less than he sought.  There can be no dispute that "Plaintiff prevail[ed] on some of the benefit sought,"[30] and is the prevailing party, entitling him to reasonable attorneys' fees and costs.

### B.  Reasonably Requested Fees and the Lodestar Calculation

In the Third Circuit, Courts calculate attorneys' fees pursuant to the "lodestar" method, which multiplies the time reasonably expended by reasonable hourly rates.[31]

---

[26] *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009).

[27] *Pub. Int. Res. Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d. Cir. 1995) (quotation marks and citation omitted).

[28] *Id.* (quotation marks and citation omitted).

[29] *Id.* (quotation marks and citation omitted).

[30] *Id.* (quotation marks and citation omitted).

[31] *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000).

*1.   Reasonable Hourly Rates*

The Court calculates "a reasonable hourly rate . . . according to the prevailing market rates in the relevant community."[32] The Court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[33] The attorney's billing rate may be a part of the analysis, but it is "not dispositive."[34]

Plaintiff requests rates of $695 per hour for each attorney on the case, as well as $299 per hour for each paralegal. The following attorneys and paralegals worked on Plaintiff's case:

(1) Timothy Prol, who graduated law school in 2014 and began working with the Derek Smith Law Group in March of 2023. Timothy Prol initially worked as an associate with another law firm, focusing on Worker's Compensation, Administrative Law, and Collective Bargaining Negotiations matters.[35]

(2) Erica Shikunov, who has been an attorney since 2013 and has dedicated her career to labor and employment litigation.[36]

(3) Nathaniel Peckham, who has been a licensed attorney in Pennsylvania since 2018 and previously practiced employment law.[37]

(4) Jason Brockman worked as a paralegal. No additional information was provided, except for the fact that he was assigned to work on the case prior to February 2023.

---

[32] *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).

[33] *Id.* (internal quotation marks and citation omitted).

[34] *Pub. Int. Res. Grp.*, 51 F.3d at 1185 (citations omitted).

[35] *See* Aff. Timothy Prol, Ex. B [Doc. No. 87-1].

[36] *See* Aff. Derek Smith, Ex. A [Doc. No. 87-1].

[37] *See* Aff. Nathaniel Peckham, Ex. C [Doc. No. 87-1].

(5) William DeVries has been a paralegal since 2021.[38]

The Court finds that Plaintiff's proposed hourly rates are excessive in light of the prevailing market rate and based on the moderate level of experience of counsel. Instead, the Court looks "to rates provided by Community Legal Services, whose fee schedule 'has been approvingly cited the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia.'"[39] While courts certainly may deviate from the fee schedule provided by the Community Legal Services, the prevailing party "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard."[40] Plaintiff failed to provide additional evidence beyond counsels' own affidavits to establish that their specialized skill, education, and experience warrant such a deviation. Upon consideration of all the relevant factors, the Court finds that a reasonable hourly rate for each attorney and paralegal is as follows:

(1) $415 is an appropriate rate for Timothy Prol.

(2) $420 is an appropriate rate for Erica Shikunov.

(3) $300 is an appropriate rate for Nathaniel Peckham.[41]

(4) $190 is an appropriate rate for paralegals Jason Brockman and William DeVries.

    *2.   Reasonable Hours Expended*

---

[38] *See* Aff. William DeVries, Ex. D [Doc. No. 87-1].

[39] *Middlebrooks v. Teva Pharmaceuticals USA, Inc.*, 2019 WL 936645, at *11 (E.D. Pa. Feb. 26, 2019) (citing *Maldonado v. Houston*, 256 F.3d at 187 (citation omitted)).

[40] *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d. Cir. 2001).

[41] Mr. Peckham was admitted to practice in Pennsylvania in 2018 and did not specify if he was a member of a different bar before then.

The next step in the lodestar calculation is a determination of the time reasonably expended on litigation.[42] "The district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"[43] Hours that would not be billed to one's own client may not be billed to an adversary.[44]

The Court has reviewed line by line Plaintiff's submitted attorney timesheets,[45] as well as Defendant's counter-analysis of Plaintiff's timesheets.[46] Defendant argues that Plaintiff's request for fees must be reduced because it includes excessive time, administrative tasks, duplicative effort, and time spent on unsuccessful claims.[47] As a preliminary matter, the Court notes that many of Defendant's disputes are unwarranted nitpicking. For example, Defendant repeatedly seeks a reduction from .2 to .1 hours. In other words, Defendant requests the Court to find that a task was unreasonably long because it took 12 minutes when it should have taken 6 minutes. With a few exceptions noted below, the Court will not second guess attorney time calculations in such a granular manner. However, the Court agrees with the Defendant's objections to Plaintiff's time calculations on other points.

---

[42] *Pub. Int. Res. Grp.*, 51 F.3d at 1185 (citations omitted).

[43] *Id.* at 1188 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[44] *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d. Cir. 2001).

[45] *See* Ex. E [Doc. No. 87-1].

[46] *See* Ex. 1 [Doc. No. 88-1].

[47] *Id.*

First, non-legal administrative tasks cannot be recovered on a fee petition.[48] The Court agrees with the Defendant that the below timesheet filings are administrative tasks for which Plaintiff's counsel should not be compensated.

| Date | Attorney | Description | Original Time | Revised Time |
|------|----------|-------------|---------------|--------------|
| 3/30/21 | Shikunov | File Federal complaint and accompanying documents | .7 | .0 |
| 11/6/23 | Prol | File Plaintiff's Pretrial Memo | .3 | .0 |
| 11/27/23 | Prol | File Responses to MILs re Evidence | .6 | .0 |
| 2/20/24 | Prol | File Responses to MILs re Expert and Witnesses | .6 | .0 |

Defendant claims that the 9 hours that Mr. DeVries spent preparing trial exhibit binders was purely administrative. However, the Court finds that preparing trial exhibit binders involves substantive work, as attorneys and paralegals decide what to include and the best presentation of evidence for a successful trial.

Second, the Court must reduce unreasonably duplicative efforts by attorneys.[49] The Third Circuit has held that "[a] reduction for duplication is warranted only if the attorneys are unreasonably doing the same work."[50] In other words, two attorneys may reasonably work on or review the same matter, as long as there is a basis for it. The Court agrees with Defendant that the below time calculations are unreasonably duplicative:

| Date | Attorney | Description | Original Time | Revised Time |
|------|----------|-------------|---------------|--------------|
| 3/10/21 | Brockman | Receive and Review Notice of Right to Sue, calendar deadlines | .3 | .0 |

---

[48] *See Nitkin v. Main Line Health*, No. 20-4825, 2022 WL 2651968 at *8 (E.D. Pa. July 8, 2022)*; Moffitt v. Tunkhannock Area Sch. Dist.*, No. 13-1519, 2017 WL 319154, at *7 (M.D. Pa. Jan. 20, 2017) ("Filing documents, whether in person or electronically, requires no legal skill and is a purely clerical or administrative task.").

[49] *See Rode v. Dellarciprete*, 892 F.2d 1177, 1187 (3d Cir. 1990); *Charles O. v. Sch. Dist. of Phila.,* No. 2014 WL 4794993, *7 (E.D. Pa. 2014)*.

[50] *Rode*, 892 F.2d at 1187 (quotation marks, citation, and emphasis omitted).

10

| Date | | Description | | |
|------|---|---|---|---|
| | | (duplicative of Shikunov's 3/10/21 entry) | | |
| 3/23/22 | Brockman | Receive and Review Scheduling Order (D.E. 16), calendar accordingly (duplicative of Shikunov's 3/23/22 entry) | .4 | .0 |
| 4/12/22 | Brockman | Receive and Review Scheduling Order (D.E. 18), calendar accordingly (duplicative of Shikunov's 4/12/22 entry) | .4 | .0 |
| 10/4/22 | Brockman | Review Stipulation to Dismiss Karen Hyers (duplicative of Shikunov's 10/4/22 entry finalizing stipulation) | .3 | .0 |
| 10/27/22 | Brockman | Receive and Review Order Extending Deadlines Motions (D.E. 22), calendared (duplicative of Shikunov's 10/27/22 entry) | .3 | .0 |
| 9/7/23 | DeVries | Receive and Review Order for Pretrial Conference (D.E. 36); calendared (duplicative of Prol's 9/7/23 entry) | .2 | .0 |
| 9/7/23 | DeVries | Receive and Review Order for Pretrial Listing Case for Trial (D.E. 37); calendared | .2 | .0 |

Next, the Court must "exclude those [hours] that are excessive . . . ."[51] The Court finds the below hours to be excessive.

| Date | Attorney | Description | Original Time | Revised Time |
|------|----------|-------------|---------------|--------------|
| 4/8/21 | Shikunov | Receive and review *additional* news articles re case | 1.2 | .2 |
| 4/12/21 | Shikunov | Receive and review *additional* news article re case | .4 | .1 |
| 3/23/22 | Shikunov | Receive and review Order re Scheduling Conference | .3 | .1 |
| 10/4/22 | Shikunov | Finalize stipulation of dismissal Karen Heyers | .7 | .2 |

[51] *Maldonado*, 256 F.3d at 184 (instructing Courts to "decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.").

Defendant argues that "hours billed as a result of re-staffing . . . cannot be recovered" by citing to *Planned Parenthood of Central New Jersey v. Attorney General of New Jersey*.[52] However, Defendant quotes only half of a sentence and therefore, entirely misconstrues the Third Circuit's language. Hours billed for re-staffing are only unreasonable when they are due to *excessive* re-staffing.[53] In *Planned Parenthood*, the Third Circuit agreed with the district court's determination that the "re-staffing" billing was in fact necessary:

> As the District Court stated, "While the Court agrees that the losing party should not be expected to pay for the time a prevailing party spends coming up to speed on an area of law it is unfamiliar with, the time a party spends reviewing the facts and underlying documents of a case is compensable." We agree.[54]

Timothy Prol took over as lead counsel on the case and required time to review all relevant documents up until that point. To quote from *Planned Parenthood*, this was "necessary for [him] to spend time getting up-to-speed on the case to be of assistance."[55] However, the initial file review of Nathaniel Peckham for 4.9 hours is unreasonable because the records do not show that he ever took any other substantive action on the case.

Defendant argues that Plaintiff's entries in connection with Dr. Glick relates solely to compensatory damages and therefore cannot be recovered because the plaintiff was unsuccessful in its request for compensatory damages.[56] It was reasonable of Plaintiff to produce Dr. Glick, but the Court in its discretion will make a downward adjustment of 4 hours in relation to attorney time spent on issues relating to Dr. Glick, which was mainly done with Mr. Prol.

---

[52] 297 F.3d 253, 271 (3d Cir. 2002).

[53] *Id.*

[54] *Id.*

[55] *Id.* at 271–72 (quotation marks omitted).

[56] *See McKenna,*, 582 F.3d 447.

Based on the previously mentioned reductions, the attorneys' and paralegals' total reasonable hours are as follows: (1) Erica Shikunov's hours are reduced from 124.4 to 121.7; (2) Nathaniel Peckham's hours are reduced from 5.2 to .3; (3) Timothy Prol's hours are reduced from 159.5 to 154; (4) Jason Brockman's hours are reduced from 20.1 to 18.4; and (5) William DeVries's hours are reduced from 71.1 to 70.7. Therefore, the total fees for each attorney and paralegal (at their reduced rates) is as follows: (1) $51,114 for Erica Shikunov; (2) $90 for Nathaniel Peckham; (3) $63,910 for Timothy Prol; (4) $3,496 for Jason Brockman; and (4) $13,433 for William DeVries. The total for all fees is $132,043.

### 3. *Reasonable Costs*

Lastly, Defendant argues that Plaintiff's request for costs should be rejected or reduced.[57] Defendant takes issue with the following costs: $2,500 for expert witness; $875.00 for video depositions; $785.48 for Erica Watson/Abbey Tennis depositions; $1,147.25 for transcript without documentation; and $106.00 for parking. Therefore, Defendant argues that the costs should be reduced to $1,469.00.

While the Court disagrees that Plaintiff's expert witness should not be paid, the Court agrees with the Defendant that the $500 "rush fee" for Dr. Glick was not adequately explained or justified. The Court also agrees that the $786.48 cost for the depositions of Erica Watson and Abbey Tennis, which occurred solely because of Plaintiff's late disclosure and who did not end up testifying at trial, should not be awarded. Lastly, the Court agrees that Plaintiff's vague and undocumented request for $1,147.25 for a "transcript" and $106.00 for parking should not be

---

[57] Def.'s Resp. Opp'n [Doc. No. 88] at 27.

awarded because there is no evidence or details provided about these requests. Therefore, Plaintiff's total awarded costs is reduced from $6,882.73 to $4,343.00.

## V.    CONCLUSION

For the aforementioned reasons, Plaintiff's Motion will be granted in part and denied in part. An order will be entered.